# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
### PITTSBURGH DIVISION

| | |
|---|---|
| **JARIUS GREENE, Individually and For Others Similarly Situated,** | **Case No.** _____1:19cv331_____ |
| **v.** | **JURY TRIAL DEMANDED** |
| **PREFERRED LICENSING SERVICES, INC.** | **COLLECTIVE ACTION** |

## COMPLAINT

### SUMMARY

1.      Preferred Licensing Services, Inc. (PLS) failed to pay Jarius Greene (Greene) and other workers like him, overtime as required by the Fair Labor Standards Act (FLSA).

2.      Instead, PLS paid Greene and other workers like him, the same hourly rate for all hours worked, including those in excess of 40 in a workweek (or, "straight time for overtime").

3.      Greene brings this lawsuit to recover unpaid overtime wages and other damages owed under the FLSA.

### JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this Action involves a federal question under the FLSA.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

6.      Preferred Licensing Services is headquartered in Pittsburgh, Pennsylvania and conducts business throughout the southern United States.

### THE PARTIES

7.      During the relevant period, Greene was an hourly employee of PLS.

8.      Throughout his employment with PLS, Greene was paid the same hourly rate for all hours worked (including those hours in excess of 40 hours in a single workweek) with no overtime compensation.

9.      His written consent is attached herein as <u>Exhibit A</u>.

10.     Greene brings this Action on behalf of himself and other similarly situated workers who were paid by PLS's "straight time for overtime" system.

11.     The class of similarly situated employees sought to be certified as a collective action under the FLSA is defined as:

> **All employees of Preferred Licensing Services, Inc. during the past 3 years who were paid straight time for overtime (the "Putative Class Members").**

12.     Greene seeks conditional and final certification of this Putative Class in this collective action under 29 U.S.C. § 216(b).

13.     PLS may be served with process by serving its President, Mark Proviano at 113 Firewood Dr., Pittsburgh, Pennsylvania 15239.

## COVERAGE UNDER THE FLSA

14.     At all times hereinafter mentioned, PLS was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15.     At all times hereinafter mentioned, PLS was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16.     At all times hereinafter mentioned, PLS was and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said

enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

17.     PLS has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as hand tools, automobiles, computers, and cell phones.

18.     At all times hereinafter mentioned, Greene and the Putative Class Members were engaged in commerce or in the production of goods for commerce per 29 U.S.C. §§ 206-207.

## THE FACTS

19.     PLS provides engineering services and major project support to meet the needs of utilities in the areas of nuclear plant engineering; nuclear safety & licensing; and operations.

20.     In order to provide services to its clients, PLS hires employees it pays on an hourly basis.

21.     Greene worked for PLS as a Nuclear Cyber Security Expert and a Capital Projects Engineer.

22.     Greene was paid $95 an hour for every approved hour worked.

23.     Greene was employed by PLS from October of 2017 until February of 2018.

24.     Greene was an hourly employee of PLS.

25.     Greene was not paid a guaranteed salary.

26.     Greene was staffed by PLS to Dominion Energy in Mineral, Virginia.

27.     Greene reported the hours he worked to PLS on a regular basis.

28.     If Greene worked under 40 hours, he was only paid for the hours he worked.

29.     But Greene would regularly work more than 40 hours in a week.

30.     In fact, Greene routinely worked 60 hours a week.

31.     For example, in the two-week period ending on November 12, 2017, Greene worked 120 hours.

| EARNINGS | DESCRIPTION | HRS/UNITS | RATE |
|---|---|---|---|
| | Hourly | 120.00 | 95.0000 |
| | Total Hours | 120.00 | |
| | Gross Earnings | | |
| | Total Hrs Worked | 120.00 | |

32.     In one or both of those weeks, Greene worked over 40 hours in a workweek.

33.     In those two weeks, Greene worked 40 hours of overtime.

34.     The hours Greene worked are reflected in PLS's payroll records.

35.     PLS paid Greene the same hourly rate for all hours worked, including those hours in excess of 40 hours in a single workweek.

36.     PLS did not pay Greene overtime for all hours worked in excess of 40 hours in a single workweek.

37.     Rather than receiving time and half as required by the FLSA, Greene only received "straight time" pay for overtime hours worked.

38.     This "straight time for overtime" payment scheme violates the FLSA.

39.     PLS was aware of the overtime requirements of the FLSA.

40.     PLS nonetheless failed to pay certain hourly employees, such as Greene, overtime.

41.     Greene and the Putative Class Members perform job duties in furtherance of the power industry business sector and are subjected to similar compensation practices.

42.     Greene and the Putative Class Members also worked similar hours and were denied overtime because of the same illegal pay practice.

43.     Greene and the Putative Class Members regularly worked in excess of 40 hours each week.

44.     PLS did not pay Greene and the Putative Class Members on a salary basis.

45.     PLS paid Greene and the Putative Class Members "straight time for overtime."

46.     PLS failed to pay Greene and the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

47.     PLS knew, or acted with reckless disregard for whether, Greene and the Putative Class Members were paid in accordance with the FLSA.

48.     PLS's failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

49.     The illegal pay practices PLS imposed on Greene were imposed on the Putative Class Members.

50.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

51.     Numerous other individuals who worked with Greene were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by federal wage laws.

52.     Based on his experiences and tenure with PLS, Greene is aware that PLS's illegal practices were imposed on the Putative Class Members.

53.     The Putative Class Members were not paid overtime when they worked more than 40 hours per week.

54.     PLS's failure to pay overtime at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

55.     Greene's experiences are therefore typical of the experiences of the Putative Class Members.

56.     The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent collective treatment.

57.     Greene has no interests contrary to, or in conflict with, the Putative Class Members.

58.     Like each Putative Class Member, Greene has an interest in obtaining the unpaid overtime wages owed under federal law.

59.     The precise size and the identity of other Putative Class Members is ascertainable from the business records, tax records, and/or employee or personnel records maintained by PLS.

60.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

61.     Absent a collective action, many Putative Class Members will not obtain redress of their injuries and PLS will reap the unjust benefits of violating the FLSA.

62.     Furthermore, even if some Putative Class Members could afford individual litigation against PLS, it would be unduly burdensome to the judicial system.

63.     If individual actions were required to be brought by each Putative Class Member, it would necessarily result in a multiplicity of lawsuits and would create hardship to Putative Class Members, to PLS, and to the Court.

64.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members and provide for judicial consistency.

65.     The questions of law and fact common to each of Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

6

a.    Whether PLS required Greene and the Putative Class Members to work more than 40 hours during individual work weeks;

b.    Whether PLS's decision to pay Greene and the Putative Class Members straight time for overtime was made in good faith;

c.    Whether PLS paid Greene and the Putative Class Members on a salary basis;

d.    Whether PLS failed to pay Greene and the Putative Class Members at a rate of one and one-half times their regular rate of pay when they worked more than 40 hours in a single workweek;

e.    Whether PLS's violation of the FLSA was willful; and

f.    Whether PLS's illegal pay practices were applied to Greene and the Putative Class Members.

66.    Greene and the Putative Class Members sustained damages arising out of PLS's illegal and uniform employment policy.

67.    Greene knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

68.    Greene will fairly and adequately represent and protect the interests of the Putative Class Members.

69.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## CAUSE OF ACTION

70.    By failing to pay Greene and the Putative Class Members overtime at one-and-one-half times their regular rates, PLS violated the FLSA's overtime provisions.

71. PLS owes Greene and the Putative Class Members overtime pay at the proper overtime rate.

72. Because PLS knew, or showed reckless disregard for whether, its pay practices violated the FLSA, PLS owes these wages for at least the past three years.

73. PLS is liable to Greene and the Putative Class Members for an amount equal to all unpaid overtime wages as liquidated damages.

74. Greene and the Putative Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

75. Greene demands a Jury trial.

## PRAYER

76. Greene prays for relief as follows:

    a.    An order allowing this action to proceed as a collective action under the FLSA and directing notice to the Putative Class Members;

    b.    A judgment finding PLS liable to Greene and the Putative Class Members for unpaid overtime and an equal amount as liquidated damages;

    c.    An order awarding attorneys' fees, costs, expenses, and judgment interest; and

    d.    An award of such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Andrew W. Dunlap*
    Michael A. Josephson
    PA Bar No. 308410
    Andrew W. Dunlap
    Texas Bar No. 24078444
    Richard M. Schreiber
    Texas Bar No. 24056278
    *(pending pro hac vice)*
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    rschreiber@mybackwages.com

    **AND**

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    **BRUCKNER BURCH, PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **AND**

    Joshua P. Geist
    PA. I.D. No. 85745
    **GOODRICH GEIST, P.C.**
    3634 California Ave.
    Pittsburgh, PA 15212
    Tel: (412) 766-1455
    Fax: (412)766-0300
    josh@goodrichandgeist.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**